Colcock, J.
The circumstance of the case as they appeared upon the trial, was as follows: The plaintiff had purchased from the defendant a tract of land, which the defendant had originally purchased from the state, and for which he owed a balance of two hundred and twenty pounds: For that sum the treasurer of the state held his bonds or obligations, when the present plaintiff purchased from the defendant the aforesaid tract of land. He agreed to give defendant six hundred pounds, paid him the sum of three hundred and eight pounds cash; and agreed at the same time to pay to the state treasurer, two hundred and twenty pounds for the defendant, whose bond had been given as aforesaid, but no def- .. . - finí „ , mite period was fixed for the payment of the same, It was understood, however, by the present plaintiff that he should pay the balance due by the defendant to the treasury, in the same manner that debts of a similar nature were uniformly paid, that is to say, to pay the annual interest, which the plaintiff did, and to discharge the principal whenever the state should think proper to require the same ; that *430 the state never did require the payment of the prin-c}pa] ari(l? therefore, the plaintiff did not fail to comply with his agreement. But the defendant volun-tarilv paid the said balance of two hundred and twenty pounds, without being required or coerced to do the same, and verdict was given against the present plaintiff therefor; from which decision he appeals, upon the ground, that he never failed to comply with his contract made with the defendant, and was not therefore, liable to refund the money which had been voluntarily paid by the defendant, but was only compelled to pay the said sum of money which he is willing to do consistent with his contract, whenever the state think proper to require the same.
This case in my judgment turns upon the construction of the agreement. Now, no particular time being mentioned, a reasonable one must be supposed to have been intended by the parties; and a reasonable time was in my opinion given to the defendant. He contends that he was to have all the time the public would give him. Can this be possible ? I think not. At all events, it is not so expressed by the agreement, and. it is not even presumable ; for what man, without the hope of gain, would run a risk? and Col. Postell would certainly have been a sufferer. If this land, which was mortgaged to the public should have been sold for less than the amount of his bond to the public, and Doctor Ramsay had become insolvent, circumstances likely to occur when he interfered : further, the Doctor' was benefited by the payment, his property was reliev *431 ed from an incumbi’ance, and of course must have sold for so much more.
But I am at all times averse to granting new trials when I think justice has been done : and in this case, to say, that the plaintiff should lose his money paid to the public, would in my humble judgment be great injustice. I am, therefore, against the motion.
Brevard, L
The plaintiff, in 1792, bargained and sold to the defendant a tract of land on Charleston neck, and took from him, in addition to certain pecuniary, and other considerations, a note in writing, in the words and figures following : “ I promise to pay Col. Postett, what he owes to the loan office, for paper medium borrowed on the mortgage of a plantation on Charleston neck, called Paradise, this day bought by me; the sum supposed to be about 223 pounds. David Ramsay. August 27tb, 1792.” It appeared that it was usual wijth the borrowers of the paper medium, to pay the annual interest on the sums borrowed, and that while this was regularly done, no call was made by the loan office for the principal. The defendant had paid the interest on the sum mentioned in the note, but had not paid the balance of the principal which remained due. The principal, however, had not been demanded by the loan office.. No suit had been commenced against the plaintiff on the part of the state for the balance due by him. Yet, under an appre- *432 tension that he might, ultimately, be a sufferer, Unless the balance was recovered from the defendant speedily, he voluntarily paid what remained due to the loan office, and then brought this action for money paid, laid oüt, &c. for the defendant.
I am rather disposed to believe the' plaintiff was under very serious apprehensions that, unless he took this step, he would eventually be compelled to do that which he did, when he paid this balance to the loan office, with an accumulation of interest, and that he would finally fail in obtaining an indemnity from the defendant on his note, Unless he hastened the settlement of the debt at the loan office. In this view of the case, his conduct cannot be regarded as officious and without probable cause. Nevertheless, I am of opinion, he had no right, according to the terms of the contract, to hasten the payment of the money due at the loan office, so as to produce any inconvenience to the defendant, to which he would not otherwise have been exposed. By the contract, he had placed the defendant, as to this loan, in his own shoes, and could have no recourse to him, until he had suffered through his fault. Here was only an impending danger of suffering, but no actual loss had accrued. It was a voluntary and unauthorised advance of money, when there was no pressing necessity for payment. I am therefore constrained to say, that the defendant is legally entitled to a new trial.
*433 •Smith, J.
James Postell had mortgaged a tract tef land, that lay on Charleston neck, to the loan office, and on the 27th Augusts 1792, he sold the land to the defendant for ^603, three hundred and eighty of which defendant paid in Cash, and gave the following security fo the balance : “ I promise to pay for Col. Postell, what he owes to the loan office for paper medium, borrowed on the mortgage of a plantation on Charleston neck, called paradise, this day bought by me, the sum supposed to be about two hundred and twenty pounds. August27th 1792.” ie David Ramsay.”
Doctor Ramsay, it appeared, had regularly ever since, paid, up to the loan office the interest each year, according to the requisitions of the law,. but had never been called on to pay the principal. But Col. Postell grew impatient, and without being called on by the loan office, voluntarily paid the amount of the principal of the bond then due, and commenced his action against the defendant to recover it back again.
Circumstances might have oecui’red that would have authorised Col. Postell, to pursue his course. Had the treasury department threatened him with a suit on the bond, after they should have sold the land, for that is the course which has been pursued in similar instances, the plaintiff would not only have had the right, but would have exercised a just prudence towards himself, in paying the money i, and then bringing suit against the defendant to recover *434 it baCk again. Here would have been a motive, and an act of self defence. 1st, Bacon. u Assump-sit,” one writer says “ is an action the law gives a party injured, by the breach or non-performance of a contract legally entered into, &c.” There must be a breach of the contract, either expressed or implied, before the right of action attaches. Doctor Ramsay has not bound himself to pay this sum of money at any particular time, but promises to pay what Col. Postell owes to the loan-office, on the mortgage on this plantation, and from the nature of the contract, it would seem that the parties intended this to be an affair, afterwards, between Doctor Ramsay and the loan-office; and if he has been dealt with, as other loan office debtors, indulged, on paying up annually the interest, with further time to extinguish the prieipal, I can see no reason for this voluntary interference of the plaintiff. He was not menaced with an action. There was no alarm from an accumulating interest, that might ultimately fall on Col. Postell, because Doctor Ramsay discharged it annually. And a mere desire on the part of the plaintiff to have it finally adjusted, could not justify the measure.
Besides, it is to be remembered that the very land which Doctor Ramsay purchased from Col. Pos-tell, is the land to be relieved by the payment of this inoney. This land was mortgaged at one third of its real value. Col. Postell sold it to Doct. Ramsay for its full value, and received In prompt pay all but the mortgage money. The act establishing the loan *435 ■office and paper medium, says, the land shall be mortgaged at one third of its value. And by an act to amend this act, passed the year following, commissioners, where they have good reason to believe the lands mortgaged, were not represented, as to their value, had the power of refusing them. These lands lay almost at the loan office door, and must have been known to the Commissioners, to be of this three-fold value, twenty seven years ago. The value of lands in this state generally, and especially in the vicinity of Charleston, since that date, has been enhanced more than two hundred per cent. The land at this time has all this accumulated value on it, without any drawback of interest accruing, and is subject to be sold in the hands of Doet. Ramsay for the payment of this loan office debt.
By the loan office act, the commissioners after four weeks default or non-payment, have nothing to do but advertise the land three weeks in the Gazette, and sell to the highest bidder. And moreover, the plaintiff would not bear the loss, if any should ac' crue, by sueh a preceding, if it should take place. Doctor Ramsay must bear it, for he is bound by his writing to the plaintiff to relieve the land from this incumbrance undef which he purchased it. Then if he has purchased the land under this incum-brance, and has obligated himself to relieve it from this incumbrance, he should have no recourse agsinst the plaintiff, if the land should be sold by the state under the mortgage. If it could be supposed, under this view of the value of the land, that *436 ^ sh°nld seW for a less sum than the principal in the mortgage, the plaintiiF might be made liable on this bond for the residue. But until that event, the land only is liable to bear the burthen, and that in the hands of Doctor Ramsay. Therefore, I think the plaintiff was under no sort of obligation, moral or legal, to pay the money on the mortgage. The doing so was an act of his own choice, and he must bear the inconvenience. And I am for a new trial,
The other Judges concurred.